UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ISMAHIL BARRIE,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT, et al.,<br><br>Respondents. | Case No. 2:26-cv-02218-TMC<br><br>ORDER ON HABEAS PETITION |

## I. INTRODUCTION

Petitioner Ismahil Barrie is detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. Petitioner is a lawful permanent resident who has been detained by respondents for over four years while they seek to remove him from the United States. Dkt. 1 at 3. On May 4, 2026, this Court ordered Respondents to provide a bond hearing to Petitioner that complied with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *Barrie v. Scott*, 2:26-cv-00880-TMC ("*Barrie I*"), Dkt. 13. An immigration judge ("IJ") denied bond on May 11, 2026, finding that Respondents had shown "by clear and convincing evidence that [Petitioner] is a Danger to Community." Dkt. 7-2 at 2. Petitioner now argues that the IJ's bond determination did not comply with *Singh* or this Court's

order and violated due process because it was unexplained, conclusory, and an abuse of the IJ's discretion. Dkt. 1 at 1–2.

## II. BACKGROUND

Petitioner has been detained by Respondents for nearly 58 months since September 20, 2021. Dkt. 7-4 at 5. An IJ initially ordered Petitioner removed to Sierra Leone on November 8, 2021, concluding that Petitioner's criminal convictions from March 2014 (Attempted First Degree Sexual Abuse and Kidnapping) constituted an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii) that subjected him to removal.[1] *Barrie I*, Dkt. 13 at 3–4. Petitioner appealed, the Board of Immigration Appeals ("BIA") affirmed, and the Eleventh Circuit ultimately reversed and remanded the case on February 19, 2026. *Barrie v. U.S. Att'y Gen.*, 167 F.4th 1315 (11th Cir. 2026). The Eleventh Circuit held that "[t]he BIA erred in its conclusion that the generic federal definition of 'rape' in 8 U.S.C. § 1101(a)(43)(A) includes digital penetration and that Barrie's D.C. conviction is a categorical match to 'rape' in § 1101(a)(43)(A)." *Id*. at 1330.

Petitioner filed his petition in *Barrie I* while waiting for the BIA to remand his immigration proceedings to an IJ. *Barrie I*, Dkt. 13 at 3. Petitioner challenged the length of his detention pursuant to 8 U.S.C. § 1226(c), which subjects noncitizens in removal proceedings to mandatory detention if they have committed certain types of criminal offenses. *Id*. Petitioner argued that, even if he was subject to mandatory detention under § 1226(c), the length and conditions of his detention violated his due process rights. *Id*. at 3–4. The Court agreed and found that Petitioner was entitled to a bond hearing:

> In *Singh v. Holder*, the Ninth Circuit clarified that "the government should be held to a clear and convincing evidence standard of proof" in a bond hearing for a noncitizen detained under 8 U.S.C. § 1226(c) whose detention has become

---

[1] Based on the definitions in 8 U.S.C. § 1101(a)(43)(A) ("murder, rape, or sexual abuse of a minor") and 8 U.S.C. § 1101(a)(43)(U) ("an attempt or conspiracy to commit an offense described in this paragraph").

> prolonged. 638 F.3d 1196, 1203 (9th Cir. 2011); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201–02 (9th Cir. 2022) (acknowledging that *Singh* "relied on the Due Process Clause in determining the procedural rights available" to § 1226(c) detainees once they became entitled to bond hearing, even if the "implied statutory right to a bond hearing" had been overruled). Accordingly, the Court agrees that Respondents will be required to meet the clear and convincing standard at Petitioner's bond hearing. *See id.*; *Banda*, 385 F. Supp. 3d at 1107; *see also Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024) (finding the BIA applied the correct legal standard in requiring the government to prove by clear and convincing evidence that a noncitizen detained under Section 1226(c) was a danger to the community); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 766 (9th Cir. 2020), *rev'd on other grounds sub nom. Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) ("Because *Jennings* did not invalidate our constitutional due process holding in *Singh*, the district court also properly required the Government to bear a clear and convincing burden of proof . . . to justify an alien's continued detention.").

*Barrie I*, Dkt. 13 at 13.

On May 11, 2026, an IJ held a bond hearing and denied Petitioner bond after finding he was a danger to the community. Dkt. 7-2 at 2–3. The IJ included no discussion or reasoning to explain his decision in the written order. *Id*. Respondents provided a recording of the hearing, however, which shows that the IJ primarily relied on Petitioner's criminal conviction and inconsistent court statements to deny him bond. Dkt. 8.

Petitioner filed the present petition on June 25, 2026. Dkt. 1. Petitioner argues that the IJ's bond decision lacked sufficient explanation and thus violated the due process requirements elaborated in *Singh*. Dkt. 1 at 2. Respondents filed a return on July 10, 2026, arguing in part that Petitioner failed to exhaust his administrative remedies because he did not appeal the IJ's decision to the BIA. Dkt. 6. Petitioner filed his traverse on July 15, 2026. Dkt. 10.

## III. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or

treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## IV. DISCUSSION

### A. Prudential exhaustion is not required.

Ordinarily, before turning to federal court, a litigant must first pursue all options available through the appropriate administrative agency. *See, e.g., Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Respondents argue that Petitioner has failed to exhaust his administrative remedies because he did not appeal his bond denial to the BIA, so the Court should deny his petition on prudential exhaustion grounds. Dkt. 6 at 6–7.

In a habeas proceeding, "[t]he exhaustion requirement is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). To determine whether a petitioner must exhaust his administrative remedies, a court typically applies three factors set forth in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007): "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id*. But even if these factors weigh in favor of exhaustion, several exceptions permit a court to waive the requirement: Exhaustion may be excused "where administrative remedies are inadequate or not efficacious, *pursuit of administrative remedies would be a futile gesture*, irreparable injury will result, or the administrative proceedings would be void." *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) (emphasis added); *see also Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("[W]here the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." (citation modified)).

It is not clear that the *Puga* factors apply where, as here, a petitioner challenges bond procedures as constitutionally defective. *Lu v. Los Angeles Field Dir.*, No. 5:26-CV-00575-JAK (SPX), 2026 WL 1455320, at *8 (C.D. Cal. Apr. 15, 2026) (citing *Hernandez*, 872 F.3d at 988–89). The BIA has "consistently refused to reach and decide constitutional questions." *Y.S.G. v. Andrews*, No. 2:25-CV-1884-SCR, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025) (collecting cases). "In light of the BIA's scope of review, administrative remedies in this case are not adequate to resolve [P]etitioner's due process challenge to the IJ's bond determination." *Id.* The Court therefore waives the prudential exhaustion requirement in this case. *See also Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *11 (C.D. Cal. Mar. 5, 2026) (applying the *Puga* factors and finding that the petitioner challenging the sufficiency of his bond hearing "was not required to exhaust administrative remedies given the questions of law at issue").

**B. The IJ's bond determination complied with the due process requirements of *Singh* and was not an abuse of discretion.**

Petitioner argues the IJ's bond denial was constitutionally defective because the IJ did not articulate the reasons that he believed Petitioner to be a danger to the community. Dkt. 1 at 10–11. According to Petitioner, the IJ failed "to apply the correct legal standard and provide a meaningful, individualized determination and explanation after determining Petitioner a danger." *Id.* at 10.

The Court's review of a bond determination by an IJ is limited. While factual questions are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). While a court may not

review underlying factual determinations such as "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" it may review mixed questions of law and fact, "even when [they] are primarily factual[.]" *Id*. at 782–84 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 225 (2024)). Such determinations are reviewed for an abuse of discretion. *Id.* at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." *Id.* at 785.

Under BIA precedent, to determine whether a noncitizen is a danger to the community or a risk of flight, an IJ is supposed to weigh nine factors: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Id*. at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

An IJ's application of the above standard "is malleable and involves agency discretion," but a federal court can still "assess whether an IJ correctly applied the [legal] standard to a given set of facts." *Id*. (quoting *Wilkinson*, 601 U.S. at 221); *see also Soriano v. Hernandez*, --- F. Supp. 3d ---, 2026 WL 969764, at *3 (W.D. Wash. Apr. 10, 2026) (finding jurisdiction to review IJ's bond denial based on flight risk finding). As discussed above, Petitioner's allegation in his habeas petition—that the IJ abused his discretion when he determined that Petitioner was a

danger to the community without sufficiently evaluating Petitioner's evidence—presents a mixed question of fact and law that the Court has jurisdiction to review.

Although the IJ did not explain his findings in the written bond denial, *see* Dkt. 7-2, Respondents have provided a 30-minute audio recording of the bond hearing that complies with the requirements of *Singh* and sheds light on the IJ's reasoning. Dkt. 8. During the hearing, the IJ primarily discussed the third and sixth *Guerra* factors—with the IJ weighing Petitioner's criminal conviction against the declarations submitted by Petitioner's family in support of his release. *See id*. at 13:30–29:55.

The IJ placed significant emphasis on the severity of Petitioner's crime and the fact that Petitioner asserted in his declaration that he was not guilty, contradicting his plea agreement. *See id*. at 16:30 ("You gave me his declaration and he denies everything . . . [do] you see the inconsistency? He stipulates, he proffers facts, signs it, gives it to a criminal court judge in the District of Columbia. And he basically says that he did all the things that the victim alleges that he did, and all the things that the prosecutor alleges that he did."). It is apparent from this exchange that the IJ questioned the credibility of Petitioner's declaration. *See Martinez*, 124 F.4th at 783 (underlying factual determinations such as credibility are unreviewable by the district court). The IJ acknowledged that Petitioner's wife (whom Petitioner's counsel posited would be the most exposed to potential danger by Petitioner) submitted a declaration supporting his release but discounted this evidence in part because the two married after Petitioner was incarcerated. *Id*. at 25:50. The IJ then stated that "the actual victim of [Petitioner's] very serious crime may be someone who has more to fear than the Respondent's current spouse." *Id*. at 27:00.

This record demonstrates that the bond hearing complied with the Court's directive. The IJ placed the clear and convincing evidence burden of proof on the government and created a contemporaneous record of the proceedings. *See Singh*, 638 F.3d at 1203–08. The IJ relied

heavily on one of the *Guerra* factors—Petitioner's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offense—and determined that Petitioner was not entitled to a bond. While the IJ did not summarize his findings at the end of the hearing, he clearly considered (1) the severity of Petitioner's conviction; (2) Petitioner's current statements that his guilty plea was false, and the credibility of those statements; (3) the fact that Petitioner has not left incarceration since he was convicted; and (4) the risk of Petitioner harming his previous victim. Finding that this evidence outweighed the evidence in Petitioner's favor, such as the declarations submitted by Petitioner's family which endorsed his good moral character, the IJ concluded that the government had met its burden to provide clear and convincing evidence supporting detention. This determination met the requirements of *Singh* and this Court is not entitled to review the IJ's balancing of evidence. *Martinez*, 124 F.4th at 784–85.

## V. CONCLUSION

The Petition for writ of habeas corpus is DENIED. Dkt. 1.

Dated this 17th day of August, 2026.

Tiffany M. Cartwright
United States District Judge